1  BARRY J. PORTMAN
   Federal Public Defender
2  CYNTHIA C. LIE
   Assistant Federal Public Defender
3  160 West Santa Clara Street, Suite 575
   San Jose, CA  95113
4  Telephone:  (408) 291-7753

5  Counsel for Defendant OCHOA-ALVAREZ

6

7
                    IN THE UNITED STATES DISTRICT COURT
8
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

10

   UNITED STATES OF AMERICA,          )     No. CR-07-00434 RMW
11                                     )
                      Plaintiff,       )     DEFENDANT'S SENTENCING
12                                     )     MEMORANDUM
   vs.                                 )
13                                     )
   ELMER OCHOA-ALVAREZ,                )     Date:   February 25, 2008
14                                     )     Time:   9:00 a.m.
                      Defendant.       )     Court:  Hon. Ronald M. Whyte
15  _____)

16

17          The defense agrees with the United States Probation Office that a sentence below the

18  advisory guideline range is appropriate in view of Mr. Ochoa's history of severe physical and

    sexual abuse as a child, and the violent persecution he experienced in Honduras as an adult
19
    following his deportations to that country.  The defense, however, respectfully submits that the
20
    guideline range is from which an appropriate variance should be measured is properly 21 to 27
21
    months, because Mr. Ochoa did not suffer a drug trafficking conviction prior to any of his three
22
    deportations, and that a further reduction in sentence is warranted in view of Mr. Ochoa's early
23
    acceptance of responsibility and his lost opportunity for concurrent sentencing.  The defense
24
    further submits that, in accordance with the Ninth Circuit's recent decision in *United States v.*
25
    *Sandoval-Lopez*, 506 F.3d 748 (9th Cir. 2007), the applicable statutory maximum penalty is 24
26

1  months under 18 U.S.C. §1326(a).

2  **I.      Mr. Ochoa's Record Does Not Merit a 16-level Enhancement Under U.S.S.G.**
           **§2L1.2(b)(1)(A)**

3          In determining whether the offense of conviction meets the narrow definition of a drug

4  trafficking offense, the Court must follow the categorical approach set forth by the Supreme

5  Court in *Taylor v. United States*, 495 U.S. 575, 602 (1990), limiting its focus to the language of

6  the statute and the controlling judicial construction of that statute.  If it is possible to violate the

7  state statute by conduct that would not meet the definition of a federal drug trafficking offense,

8  then the conviction is not categorically a drug trafficking conviction under §2L1.2.  For example,

9  the Ninth Circuit has repeatedly held that California statutes prohibiting both sale and solicitation

10  or "offers . . . to sell" controlled substances are not categorically drug trafficking offenses.  *See*,

11  *e.g.*, *United States v. Rivera-Sanchez*, 247 F.3d 905, 908 (9th Cir. 2001); *see also United States v.*

12  *Almazan-Becerra*, 482 F.3d 1085, (9th Cir. 2007) (statutes prohibiting transportation, sale or

13  offers to sell marijuana and methamphetamine are not categorically drug trafficking offenses).

14  Under these controlling Ninth Circuit authorities, soliciting a sale of drugs does not constitute

15  drug trafficking.

16          The Oregon statute under which Mr. Ochoa was convicted does not categorically describe

17  a "drug trafficking offense" under §2L1.2.  Although Oregon Revised Statute 475.992 refers to

18  "delivery" of controlled substances, "delivery" under the controlling judicial construction of the

19  Oregon statute has a broader definition than the Ninth Circuit's very narrow federal definition of

20  drug trafficking.  The Oregon Supreme Court has provided the controlling judicial interpretation

21  of the state statute, and has determined that "delivery" under Section 475.992(1) includes

22  attempted delivery, which in turn includes solicitation:

23          We conclude that, ***if a person solicits another to engage in conduct constituting an***
           ***element of the crime of delivery***, e.g., to provide to the person a controlled substance for
24         the purpose of distribution to third parties, the person has taken a substantial step toward
           committing the crime of attempted delivery under ORS §475.992(1).  Under that statute,
25         ***the conduct constitutes delivery***.

26

1  *State v. Sargent*, 110 Or. App. 194, 198 (1991)(emphasis added).  Accordingly, the Oregon

2  statute does not categorically describe a drug trafficking offense.

3         The statute of conviction, though overbroad, does encompass conduct that would

4  otherwise constitute a drug trafficking offense.  Accordingly, the Court may resort to the

5  modified categorical approach under *Taylor*, considering judicially noticeable facts and records

6  regarding the defendant's prior offense conduct, to determine whether the particular facts,

7  notwithstanding the breadth of the statute of conviction, constitute a "drug trafficking offense."

8  Such documents might include the indictment, the judgment of conviction, jury instructions or a

9  signed guilty plea.  *See, e.g.*, *Rivera-Sanchez*, *supra*, 247 F.3d at 908.  However, in the present

10  case, the judicially noticeable facts do not support such an inference.  The Indictment and the

11  Petition to Enter Plea merely recite the statutory term "delivery," without excluding the mere

12  solicitation that the Oregon Supreme Court has held would constitute "delivery."

13         Moreover, Mr. Ochoa made no more specific admission in his plea colloquy.  In his

14  written petition to enter a guilty plea, he specified that his guilty plea was pursuant to *North*

15  *Carolina v. Alford*, 400 U.S. 25 (1970), indicating "*Alford* plea" in the space otherwise reserved

16  for the factual basis of the plea.  Exh. B.  In taking the guilty plea, the court conducted a limited

17  amount of voir dire as to Mr. Ochoa's execution of the written petition and his understanding of

18  his rights, but made no attempt to elicit any factual admission from Mr. Ochoa, or any

19  endorsement of the factual basis articulated by the prosecutor.  The Ninth Circuit has recently

20  held that a plea pursuant to *People v. West*, 477 P.2d 409 (Cal. 1970), California's equivalent of

21  an *Alford* plea, does not constitute a factual admission by the defendant sufficient to identify the

22  theory under which the judgment of conviction was based:

23          Although [the defendant] signed the written plea and waiver of rights form, he wrote only
        "People v. West" in the section requesting a description of "facts as to each charge" to

24          which he was pleading guilty.  The form, like the Complaint, therefore fails to establish
        the factual predicate for [the defendant's] plea.

25  *United States v. Juan Jose Vidal*, 504 F.3d 1072, 1087 (9th Cir. 2007).  The prosecution's

26

characterization of the evidence during the plea colloquy cannot be imputed to Mr. Ochoa absent an express admission or adoption of that statement and is therefore not a judicially noticeable fact. *See, e.g.*, *Shepard v. United States*, 544 U.S. 13 (2005) (police reports submitted in support of issuance of charging documents not judicially noticeable facts under *Taylor* because facts were not admitted by defendant in plea colloquy). As in *Shepard*, "[i]n this particular pleaded case, the record is silent on the generic element, there being no plea agreement or recorded colloquy in which [the defendant] admitted the generic fact." *Id.* at 25. Moreover, in the present case, the factual proffer supplied by the Oregon prosecutor for the plea does no more than place Mr. Ochoa in the vicinity of a drug trafficking crime, without alleging that he had knowledge of the drug trafficking activity of his codefendants, and specifically relates that Mr. Ochoa denied any participation in drug trafficking. Even if this recitation by the prosecutor could be considered a judicially noticeable fact despite the clear prohibition of *Shepard*, the conduct described would not be sufficient to establish a drug trafficking offense. Accordingly, Mr. Ochoa's Oregon conviction merits no more than a 4-level enhancement under U.S.S.G. §2L1.2(b)(1)(D).

## II.    A Sentence Below the Guideline Range Is Warranted In View of Circumstances Relating to Mr. Ochoa's Background and History

Mr. Ochoa is one of 11 children born to Alejandro Ochoa and Aurora Alvarez. From the age of nine, Mr. Ochoa divided his days between full days of schooling and long hours in the fields, working either for his father or on neighboring plots of land. For most of Mr. Ochoa's childhood, his diligence and that of his siblings did little to spare them the physical abuse of their perpetually enraged father. Ms. Alvarez describes her husband routinely beating the children with a stick that had a nail protruding from it. A more dramatic form of discipline involved hoisting the children by means of a leather strap tied around their necks. Mrs. Ochoa recalls that in one such instance, Mr. Ochoa was made to hang to the point of losing consciousness, his tongue lolling out of his mouth. Exh. C. The abuse, though extraordinary in its violence, was so routine for the Ochoa family that one brother died in an electrical storm rather than return home

to their father's wrath.  PSR ¶40.   It is thus unsurprising that Mr. Ochoa, followed soon after by a number of his siblings, made his way to the United States as a young adult, rather than remain a part of their father's community.

That Mr. Ochoa persisted in returning to the United States, despite multiple deportations, is the result of repeated instances of persecution by the Mara Salvatrucha, a notorious Central American criminal gang.  Through no apparent fault of his own, Mr. Ochoa became the target of the gang's violent outreach while in Honduras.  He left school at age 16 due to his fear of the Mara and their influence in the school.  Exh. F.  He was stabbed in the abdomen and left for dead in 1996 or 1997, when he resisted the Mara's efforts to recruit him following his first deportation.  Exhs. C and D; PSR ¶44.  Mr. Ochoa was not alone among his family members in becoming the target of gang violence; two of his uncles were likewise victimized.  Exh. C.  His family believes that one additional reason for the family's continued victimization is the involvement of two of Mr. Ochoa's brothers in gang interdiction activity.  One brother, Danery Ochoa-Alvarez, is a police lieutenant; another, Alexis Ochoa, provides security to the president of the Honduran National Congress, a vocal opponent of the Mara.  Mr. Ochoa, like his uncles, lacks the institutional protection that these brothers enjoy by virtue of their occupations.   After his most recent deportation, he attempted once again to make a life for himself in Honduras, only to have the Mara conduct a drive-by shooting at his sister's home, where he was temporarily residing.  Exhs. C and E. It was then that his mother pleaded with him to leave Honduras and return to the United States.  Exh. D.

The Probation Office, while acknowledging the violence motivating Mr. Ochoa's presence in the United States, notes that Mr. Ochoa has by his drug activity voluntarily exposed himself to associated dangers.  With the exception of the Oregon offense, Mr. Ochoa does not deny responsibility for his criminal activity, which the guidelines adequately take into account in computation of both his Criminal History Category and his offense level.  However, measured against other defendants who resort to drug-related activity, whether for personal use or for

1    profit, Mr. Ochoa's personal circumstances substantially mitigate his criminal history.  In

2    addition to the violence he experienced at the hands of his father and the Mara Salvatrucha, Mr.

3    Ochoa has also had to cope with the painful memory of the sexual abuse he suffered as a child,

4    and like other such victims, he resorted to alcohol and drugs as a means of muting the resulting

5    anguish.  The legacy of that abuse continued  through a campaign of blackmail that exploited Mr.

6    Ochoa's instinctual fear of his father and his personal sense of shame as a victim of pedophilia in

7    a patriarchal, machismo-driven culture.  Mr. Ochoa's need to earn larger and larger sums of

8    money drove him repeatedly north from Honduras, in search of opportunities to satisfy his

9    blackmailer's demands.  PSR ¶51.

10   **III.    Mr. Ochoa's Early Acceptance of Responsibility and the Need to Avoid Disparities
          in Sentencing Also Merit a Sentence Below the 21-27 Month Guideline Range**

11

12              Independent of the mitigating factors unique to Mr. Ochoa's background and history, the

     statutory objective of avoiding disparities in sentencing similarly situated defendants would

13   likewise be served by a sentence of 9-15 months.  Mr. Ochoa has never previously been arrested

14   or prosecuted for Illegal Reentry After Deportation.  He has never been arrested or convicted for

15   any crime of violence.  He would, under the prevailing practice in this district, have been eligible

16   for a four-level reduction under U.S.S.G. §5K3.1, to a range of 9 to 15 months, but for the

17   government's insistence upon his stipulation to a legally invalid guideline calculation.  He

18   entered a guilty plea at the first district court appearance following the government's withdrawal

19   of a 21-month settlement offer that counsel for the government had previously agreed to only

20   days before.

21              Nothing in Mr. Ochoa's criminal record serves to distinguish him from other defendants

22   who have received the benefit of fast-track adjudication.  *See*, *e.g.*, *United States v. Adeliado*

23   *Torres-Torres*, CR 07-00436 RMW (defendant completed service of 5-year state sentence for

24   possession of precursor chemicals with intent to manufacture methamphetamine prior to fast-

25   track disposition of 21 months); *United States v. Jose Gonzalez-Hernandez*, CR 01-20023 RMW

26

1  (defendant convicted of multiple drug trafficking offenses with sentences up to 7 years 8 months

2  prior to first of two fast-track dispositions).  Although the prosecution is free to refuse fast-track

3  dispositions to defendants for any reason, however arbitrary, or to condition such a disposition on

4  an unlawful guideline calculation, the plain terms of 18 U.S.C. §3553 authorize this Court to

5  exercise its sentencing powers to remedy unwarranted disparities thereby produced, and to grant

6  a sentencing reduction commensurate with U.S.S.G. §5K3.1.

7         Lastly, because the government withdrew its offer of settlement and Mr. Ochoa thereafter

8  entered an "open" guilty plea, the Court also retains the authority to impose its sentence

9  concurrently with Mr. Ochoa's state sentence.  Mr. Ochoa was in continuous state custody from

10  September 21, 2005 to June 13, 2007, a period of 21 actual months, prior to entering federal

11  custody.  PSR ¶¶28-29.  Had the government brought the charges in a more timely fashion, Mr.

12  Ochoa could have requested that the state court run its sentences concurrently with his sentence

13  in the instant case.  That the state court was receptive to concurrent sentencing is reflected in its

14  disposition of Mr. Ochoa's two state cases.  *Ibid.*   A lost opportunity for concurrent sentencing is

15  a factor that would have warranted a downward departure from the guideline range even before

16  the Guidelines were deemed merely advisory in *United States v. Booker*, 543 U. S. 220 (2005).

17  *See*, *e.g.*, *United States v. Sanchez-Rodriguez*, 161 F.3d 556 (9th Cir. 1998).  The Court

18  accordingly retains the authority to reduce Mr. Ochoa's sentence to reflect his lost opportunity

19  for a sentence fully or partially concurrent with his now-discharged state term.  *See*, *e.g.*,

20  U.S.S.G. §5G1.3.  Even without a reduction for his early acceptance of responsibility or the

21  specific mitigating factors relating to his background and history, an adjustment in sentence to 9

22  to 15 months can independently be justified to effect a partially concurrent sentence.

23

24

25

26

Defendant's Sentencing Memorandum          7

**IV.    Pursuant to *Sandoval-Lopez*, the Statutory Maximum Penalty Should Be Limited to Two Years**

Over the past several years, the Ninth Circuit and Supreme Court have endeavored to delineate the scope of the Sixth Amendment as it applies to recidivist offenses.  This effort has produced a series of inconsistent decisions.  For example, in *United States v. Gonzalez-Medina*, 976 F.2d 570, 572 (9th Cir. 1992), the Ninth Circuit squarely held that "[b]ecause sections 1326(a) and 1326(b)(1) (and, *a fortiori*, 1326(b)(2))) constitute separate crimes – and not merely a single offense with different sentencing criteria – the government was obligated to put on evidence of the defendants' prior felony convictions"; this decision, however, was abrogated by the Supreme Court's 5-4 decision in *Almendarez-Torres v. United States*, 553 U.S. 2241 (1998).

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court rejected the distinction – between "sentencing factors" which increased maximum penalties and "elements" of substantive crimes – on which the slim *Almendarez-Torres* majority had relied and held that a factual determination authorizing an increase in the maximum prison sentence must be made by a jury on the basis of proof beyond a reasonable doubt.[1]  The Court stopped short of overturning *Almendarez-Torres*, but instead recast that prior decision as "a narrow exception" to its new rule. *Id.* at 490.

However, the logic of *Apprendi* persuaded Justice Thomas that *Almendarez-Torres*, in which he had cast a crucial vote to constitute the majority, had been wrongly decided:

> Notwithstanding the broad meaning of the term "crime,"  this Court has qualified the protections of the Fifth and Sixth Amendments by holding that, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.*, at 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (emphasis added).  But the exception to trial by jury for establishing "the fact of a prior conviction" finds its basis not in the Constitution, but in a precedent of this Court. *See Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998).  Moreover, it has long been clear that a majority of this Court now rejects that exception. *See  Shepard v. United*

---

[1]The Ninth Circuit, in *United States v. Buckland*, 289 F.3d 558 (9th Cir. 2002), further specified that such facts must also be alleged in the indictment.

1   *States*, 544 U.S. 13, 27-28, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005) (Thomas, J.,
    concurring in part and concurring in judgment); *see also  Almendarez-Torres*, *supra*, at
2   248-249, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (Scalia, J., joined by Stevens, Souter, and
    Ginsburg, JJ., dissenting);  *Apprendi*, *supra*, at 520-521, 120 S. Ct. 2348, 147 L. Ed. 2d
3   435 (Thomas, J., concurring).

4   *Rangel-Reyes et al. v. United States*, 126 S.Ct. 2873, 2874 (2006) (Thomas, J., dissenting from

5   denial of certiorari).

6       Notwithstanding the Supreme Court's reluctance to revisit the basic rule of *Almendarez-*

7   *Torres*, the Ninth Circuit has recently articulated a basis for distinguishing that "narrow

8   exception" to the Sixth Amendment mandate it had announced in *Apprendi*.  In *Salazar-Lopez*,

9   *supra*, 506 F.3d 748, the Court squarely addressed the question of "whether the dates of a

10  previous felony conviction and of a previous removal from the United States must be alleged in

11  the indictment and proved to a jury for the defendant to be subject to an increased sentence under

12  8 U.S.C. § 1326(b). We answer that question in the affirmative." *Id.* 749-750.  In so holding, the

13  Court reasoned that the fact that triggered the statutory maximum of §1326(b) was the *sequence*

14  of prior conviction and the defendant's two removals, not the mere fact of the prior conviction:

15  "As such, the date of the removal, or at least the fact that Salazar-Lopez had been removed *after*

16  his conviction, should have been alleged in the indictment and proved to the jury. The failure to

17  due so was an *Apprendi* error." *Id.* at 752 (emphasis in original).  The information in the instant

18  case alleges three different dates of removal, but the earliest of these would have preceded both

19  of Mr. Ochoa's felony convictions.  The multiplicity of removal dates compounds the failure to

20  allege the temporal relationship between one of the removals and Mr. Ochoa's felony

21  convictions, and accordingly implicates the identical error at issue in *Sandoval-Lopez*, where one

22  of the  multiple removals at issue occurred before the felony conviction that would otherwise

23  trigger §1326's increased maximum penalties.  That the Ninth Circuit deemed the error to be

24  harmless in *Sandoval-Lopez* does nothing to vitiate the fact of the error.

25

26

1

**CONCLUSION**

2          For the foregoing reasons, defendant Elmer Ochoa-Alvarez respectfully requests a

3    sentence of 9 to 15 months imprisonment, with a term of supervised release of no more than 1

4    year.

5

6    Dated: February 19, 2008

7                                              Respectfully submitted,

8                                              BARRY J. PORTMAN
                                               Federal Public Defender
9
                                                       /S/
10
                                               CYNTHIA C. LIE
11                                             Assistant Federal Public Defender

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Defendant's Sentencing Memorandum                    10